## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MERCEDES QUESADA, individually and behalf of all others similarly situated, | No. 6:23-cv-01809-PGB-LHP |
| Plaintiff, | FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND |
| v. | |
| BETTER EARTH, INC., and BETTER EARTH ELECTRIC FL, LLC, | |
| Defendants. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Mercedes Quesada ("Plaintiff"), individually and on behalf of the other members of the Nationwide Class or Statewide Class defined below (the "Class") file this First Amended Class Action Complaint (the "Complaint") against Defendants Better Earth, Inc. and Better Earth Electric FL, LLC (collectively "Better Earth" or Defendants") arising from Defendants' practice of systemically, repeatedly and continually 1) failing to install solar energy systems within the 90 day period as set forth in the Contract; and 2) failing to install solar energy systems that are fully operable.

As a result of Defendants' wrongful conduct, Plaintiff and the Class have uniformly suffered quantifiable financial harm as a result of being deprived the full use of their solar energy systems.

1

## <u>NATURE OF THE ACTION</u>

**<u>The solar energy industry is fraught with egregious wrongful conduct resulting in harmed consumers with no recourse.</u>**

1.      A year-long investigation into the solar industry by consumer

watchdog group Campaign for Accountability ("CfA") revealed:

> Unscrupulous actors have exploited vulnerable populations, preying on the elderly and those on fixed-incomes.  Companies have misled consumers about the true costs of installing solar panels, provided shoddy craftsmanship, and left homeowners with higher utility costs, all while forcing them to sign unconscionable contracts that leave little possibility of recourse.[1]

2.      The CfA report further found:

> American consumers identified numerous companies that provided poor or inadequate service, falsely represented the savings the customers would realize from solar power, lured them in with low price quotes that later proved to be false, required them to sign confusing contracts, and/or performed shoddy installation of the solar panels.[2]

3.      In a Federal Trade Commission workshop focused on the solar

energy industry, the Consumers Union reported that consumers are facing

challenges that include "dealing with bad actors, and those are things like fraud,

misrepresentation…"[3]

---

[1] *What Consumer Complaints Reveal about the Solar Industry*, Campaign for Accountability, https://campaignforaccountability.org/work/what-consumer-complaints-reveal-about-the-solar-industry/, (Last visited July 13, 2023).
[2] *Id.*
[3] *Something New Under the Sun:  Competition & Consumer Protection Issues in Solar Energy*, Federal Trade Commission Solar Energy Workshop, at p. 4, https://www.ftc.gov/system/files/documents/videos/something-new-under-sun-competition-consumer-protection-issues-solar-energy-workshop-part-4/ftc_solar_energy_workshop_-_transcript_segment_4.pdf (Last visited July 13, 2023).

4.      On June 14, 2023, USA Today reported on a national solar contractor defrauding thousands by failing to obtain the proper permits before installing panels, resulting in homeowners paying for solar energy systems that are not connected to the power grid.[4]

5.      On March 6, 2023, WFTV 9 Orlando reported on a Chuluota homeowner who had spent $100,000 on a solar energy system that had not been turned on or connected to the power grid 8 months after the installation was completed because the system failed inspection.[5]

6.      The WFTV 9 Orlando story also covered a Winter Garden homeowner who had spent $66,000 on a solar energy system that had not been turned on or connected to the power grid because the system failed inspection.[6]

7.      On January 31, 2023, WPEC CBS12 News West Palm Beach reported on a Deerfield Beach solar company "starting solar projects, then walking away without connecting the panels to the grid, or securing the proper permits".[7]

8.      The WPEC CBS12 News story further reported that a Deerfield Beach homeowner had a solar energy system installed in August 2021, but the

---

[4] *New Jersey solar company allegedly pressured vulnerable populations into contracts for 'a shoddy product'* https://www.usatoday.com/story/money/2023/04/10/vision-solar-panel-lawsuit/11600307002/ (Last visited July 13, 2023).
[5] *"It's not right": Homeowners feel abandoned after spending a fortune on solar systems they can't use,* https://www.wftv.com/news/action9/its-not-right-homeowners-feel-abandoned-after-spending-fortune-solar-systems-they-cant-use/DN5JSXHAC5DCXJJLU3K6WBPGE4/ (Last visited July 14, 2023).
[6] *Id.*
[7] *I-Team: Customers stuck paying for non-working, unpermitted solar panel,* https://cbs12.com/news/local/i-team-vision-solar-panels-permits-south-florida-deerfield-beach-scam-1-31-2023 (Last visited July 14, 2023).

system had never been turned on or connected to the power grid because the solar company had not obtained the proper permits.[8]

9.     The WPEC CBS12 News story also reported that a Boca Raton homeowner had spent $40,000 on a solar energy system that had not been turned on a year and a half after installation because the solar company had failed to obtain the proper permits, "making her installation illegal."[9]

10.     Palm Beach Building Official Doug Wise commented on the story: "It's competitive advantage…They can sell the job and walk away. The problem is the homeowner ends up holding the bag particularly when there aren't permits."[10]

11.     The aforementioned consumer watchdog reports, government agency forum, and news media coverage are a fraction of the information evidencing an epidemic across Florida and the U.S. involving solar companies breaching contracts and defrauding consumers.

**<u>In the present action, Defendants engaged in egregious wrongful conduct that caused financial harm to Plaintiff.</u>**

12.     On May 7, 2022, Plaintiff Mercedes Quesada ("Plaintiff") contracted with Defendant Better Earth Electric FL, LLC, located in Lakeland, Polk County, Florida, to install a 12.96 kW solar energy system (the "system") consisting of 36

---

[8] *Id.*
[9] *Id.*
[10] *Id.*

solar panels on Plaintiff's single-family home in Orlando, Orange County, Florida.[11]

13.     As set forth in the Home Improvement Contract ("the Contract") executed by Plaintiff and Defendants, commencement of the work was the date the company performed the site inspection:[12]

**4. Start and Completion of Work**
Approximate Start Date - The date of substantial commencement of Work shall be the date the Company actually commences to perform the Site Inspection/Audit on the Property, as set forth in Section 3.

14.     The Contract further provided that the installation would be completed within 90 days from the date Defendant performed the site inspection on the property:

Approximate Completion Date - Except as otherwise provided herein, Better Earth Electric shall achieve Completed Installation within ninety (90) days from the date the Company commences to perform the Site Inspection/Audit on the Property (the "Approximate Completion Date").

**Installation shall be deemed complete on the day the Products are fully installed and ready for final inspection, start-up and testing.**

15.     Importantly, the Contract provides that "[i]nstallation shall be deemed complete on the day the Products are fully installed and ready for final inspection, start-up and testing."

16.     Therefore, a system that is not "fully installed", fails inspection, fails to "start-up" and/or fails to function cannot be "deemed complete" under the terms of the Contract.

---

[11] *Better Earth Electric, FL, LLC Home Improvement Contract*, p. 1.
[12] *Id*. at p. 7.

17.     The Notice of Commencement for the installation of Plaintiff's solar energy system was May 21, 2022.

18.     Defendants applied for the permit on July 6, 2022, forty-seven (47) days after the Notice of Commencement.

19.     On December 16, 2022, Orange County issued the Certificate of Completion after one-hundred and sixty-three days (163) had passed since the date the permit was issued.

20.     From commencement to the alleged completion, two-hundred and nine (209) days passed.  In other words, nearly four (4) months passed after the ninety (90) day period set forth in the Contract had lapsed.

21.     However, Plaintiff's system was **still not connected to the grid and generating energy in December 2022**.

22.     As set forth in the Contract, the system was to be "completed in a quality manner and in compliance with all local building and electrical codes, all other applicable laws, and all applicable utility requirements, including appropriate utility interconnection obligations."[13]

**8. Work Quality**
All work shall be completed in a quality manner and in compliance with all local building and electrical codes, all other applicable laws, and all applicable utility requirements, including appropriate utility interconnection obligations.

---

[13] *Id.* at p. 9.

23.     As set forth in the Duke Energy Standard Interconnection Agreement ("Interconnection Agreement"), customers of Duke Energy are required to maintain umbrella policies and those customers who fail to secure or maintain the umbrella policy may have their electrical service disconnected:[14]

8.      The Company requires that the Customer maintain general liability insurance for personal injury and property damage in the amount of not less than one million dollars ($1,000,000) to the extent permitted by law.   The Customer shall provide the Company proof of continuing insurance coverage on an annual basis. For government entities, the policy coverage shall not exceed the entity's maximum liability established by law.   Proof of self-insurance consistent with law shall satisfy this requirement.

10.     The Company may isolate the Customer's system from the distribution grid using the manual disconnect switch without prior notice to the Customer. To the extent practical, however, prior notice shall be given.  The system will be reconnected as soon as practical once the conditions causing the disconnection cease to exist.   Conditions which may require the disconnection of the Customer's system are:

(d)  Failure of the Customer to maintain the required insurance coverage.

24.     Defendants represented to Plaintiff that Defendant would pay for the additional $1 million personal liability policy ("PLP" or "umbrella policy") required by Duke Energy for homes with solar energy systems larger than 10 kW and up to 100 kW.

25.     To date and more than a year after executing the contract, Defendants have failed to pay Plaintiff the premium for the umbrella policy.

26.     Plaintiff purchased the solar energy system from Defendants based on Defendant's representations that it would pay the premium for the umbrella policy.

27.      Defendant further represented to Plaintiff that Defendant would reimburse Plaintiff for her monthly loan payments toward financing the solar

---

[14] *Standard Interconnection Agreement*, Duke Energy Florida, Inc., pp. 1 and 2.

energy system until the system was operable, thereby avoiding a situation where Plaintiff was both paying her electric utility company for energy and making the monthly loan payment to the finance company for the solar energy system.

28.     Defendant reimbursed Plaintiff $193.94 per month from November 2022 through April 2023 for her solar energy system monthly loan payments.

29.     On June 5, 2023, Defendant reimbursed Plaintiff $387.88 for May 2023 and June 2023, after Plaintiff had waited several weeks for the May 2023 reimbursement.

30.     Defendant has made no additional reimbursements to Plaintiff for her monthly loan payments, in spite of her solar energy system not being fully operable.

31.     Upon information and belief, in or around April 2023, Defendants unlawfully activated Plaintiff's solar energy system without notifying Duke Energy.  In addition, there is no mention of solar production on Plaintiff's electric bill from Duke Energy, indicating that Duke Energy is unaware that Plaintiff has a solar energy system connected to the grid.

32.     By April 2023, approximately eight (8) months had passed since the 90 day period set forth in the Contract for the completion of the system had lapsed.

33.     To date and more than a year after executing the contract, Plaintiff has not acquired a $1 million umbrella policy for her home as required by Duke

Energy because she is waiting for Defendant to send her the payment for the umbrella policy premium as Defendant represented that it would do.

34.    As a result of Defendant activating the system without notifying Duke Energy, a bi-directional meter has not been installed which would allow Plaintiff to be credited for any energy that her solar energy system produces and flows into the grid, a process known as "net metering."

35.    As set forth in the Interconnection Agreement, Duke Energy will install metering equipment, but that is contingent on a customer's solar energy system passing inspection and the customer acquiring the required umbrella policy:[15]

---

14.    The Company will install metering equipment on the Customer's premises capable of measuring any excess kilowatt-hours produced by the Customer's system and delivered to the Company's electric system. The cost of the meter, installation, maintenance, and any costs of reading and billing associated with this meter equipment shall be borne by the Company. The value of such excess generation shall be reflected on the Customer's bill based on the Company's applicable net metering for customer-owned renewable generation tariff approved by the Florida Public Service Commission.    This tariff can be found at the Company's website – www.progress-energy.com/florida/home/renewable-energy/interconnect.page..

---

36.    To date, Plaintiff cannot be credited for any energy that her system produces and flows into the power grid ("net metering") because Duke Energy has not installed a bi-directional meter.

37.    Importantly, Plaintiff did not know, and had no way of knowing, that a bi-directional meter had not been installed and that she was not benefiting from

---

[15] *Id.* at p. 2.

net metering until an independent solar contractor inspected her system in May 2023.

38.     Without net metering, Plaintiff has paid higher electric bills each month than she would have with net metering, and has suffered, and will continue to suffer, quantifiable financial harm.

39.     In summary, Defendants 1) failed to install a solar energy system within the 90 day period set forth in the Contract; and 2) failed to install a solar energy system that is fully operable.

## PARTIES

### Plaintiff

40.     Plaintiff Mercedes Quesada ( "Plaintiff") is a citizen of Florida and resident of Orlando, Orange County, Florida.

41.     As set forth above, Plaintiff contracted with Defendant Better Earth Electric FL, LLC for the installation of a residential solar energy system (the "system") on her home in Orlando, Orange County, Florida.

42.     Plaintiff is employed as a housekeeper, speaks English as her second language, and is a grandmother.

### Defendants

43.     Defendant Better Earth Electric FL, LLC is a Florida corporation with a principal place of business located at 1600 East 8th Ave., Suite 106A, Tampa, Florida 33605.

44.     Defendant Better Earth Electric FL, LLC has a registered agent, Shaun Sharabi, located at 1600 East 8th Ave., Suite 106A, Tampa, Florida 33605.

45.     Defendant Better Earth Electric FL, LLC is a wholly-owned subsidiary of Defendant Better Earth, Inc.

46.     Defendant Better Earth Inc. is a California corporation with a principal place of business located at 16720 Marquardt Ave., Cerritos, California 90703.

47.     Defendant Better Earth Inc. has a registered agent, Shaun Sharabi, located at 1600 East 8th Ave., Suite 106A, Tampa, Florida 33605.

48.     Defendant Better Earth Inc. represents on its website that it operates in California, Arizona and Florida.[16]

49.     Defendants Better Earth Inc. and Better Earth Electric FL, LLC are collectively referred to herein as "Defendants" or "Better Earth".

## JURISDICTION AND VENUE

50.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is of diverse citizenship from

---

[16]Better Earth homepage, https://betterearth.solar/ (Last visited May 26, 2023).

Defendants, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

51.     This Court has personal jurisdiction over Defendants because Defendants' contacts with the State of Florida are systematic, continuous, and sufficient to subject them to personal jurisdiction in this Court.  Specifically, Defendants purposefully availed themselves of the privilege of conducting business in the forum state by advertising and selling solar energy systems within the forum state. Additionally, Defendants have maintained systematic and continuous business contacts within the forum and are registered to conduct business in the State.  In addition, Defendant Better Earth Electric FL, LLC has its principal place of business located in this District.

52.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this District.  Defendants have marketed, advertised, and sold solar energy systems and otherwise conducted extensive business within this District.

53.     Plaintiff Mercedes Quesada, as well as many other Class Members, purchased their solar energy systems from Defendants' agents and offices located in this District.

## FACTS COMMON TO ALL COUNTS

12

**Plaintiff and the Class contracted with Defendants for solar energy systems and Defendants breached their contractual agreements with Plaintiff and the Class.**

54.    Plaintiff and the Class uniformly contracted with Defendants for residential solar energy systems.

55.    Defendants represented to Plaintiff and the Class that Defendants would complete the installation of their systems within 90 days from the date the work was commenced, as provided in the Contract.

56.    Defendants failed to complete the installation of systems for Plaintiff and the Class within the 90 day period set forth in the Contract.

57.    As a result, Plaintiff and the Class were deprived of the use of their systems for months and months after the 90 day period lapsed.

58.    Plaintiff and the Class relied on Defendants' representations that Defendants 1) would complete the installation of their systems within 90 days from the date the work was commenced, and 2) that Plaintiff and the Class would have the benefit of fully operable solar systems that produced energy for their homes and net metering.

**Plaintiff and the Class have suffered quantifiable financial harm as a result of Defendants' wrongful conduct.**

59.    Plaintiff and the Class have suffered quantifiable financial harm because:

a.      Plaintiff and the Class were deprived of the use of their systems when Defendants failed to complete their systems within the 90 day period set forth in the Contract—in many cases while Plaintiff and the Class made monthly payments on the systems **and** paid their monthly electric utility bills; and

b.      Plaintiff and the Class have paid higher electric bills because their systems are not fully operable and/or their electric utility companies have not installed bi-directional meters which would allow Plaintiff and the Class the benefits of net metering.

## Defendants' wrongful conduct has been uniformly directed toward a Nationwide Class or State Class.

60.     Defendants' wrongful conduct is systemic, continuous and repetitive, and Defendants have uniformly directed their wrongful conduct toward a Nationwide Class or State Class.

61.     On the Better Business Bureau website, numerous putative Class Members have posted reviews that evidence Defendants wrongful conduct, complaining of the same factual allegations that are the basis for the causes of action in this Complaint:[17]

_____

[17] Better Business Bureau website, https://www.bbb.org/us/ca/santa-ana/profile/solar-energy-contractors/better-earth-solar-1126-1000077532/complaints?page=2 (Last visited May 25, 2023).

62.     Putative class member James B complained, "I am paying a payment on the panels (not being reimbursed like I was promised) and paying my power bill and the panels aren't on…":

James B



03/15/2023

I had my panels put on in October, I was never given a quote on the project, was never shown cost or timeline. the sales reps didn't really take no for an answer or give me any answers. in addition it is now mid March and I am paying a payment on the panels (not being reimbursed like I was promised) and paying my power bill and the panels aren't on because "we can't get an inspection team out".this company is a scam, and will leave you with $60,000 systems that they don't get functioning!

63.     Putative class member Richard L complained, "I have been making payments to GoodLeap (the loan company) which began shortly after the install. Better Earth has rebated me some of these payments…after nearly 7 months we are still waiting for the system to be activated."

Richard L



12/30/2022

7 MONTHS AND STILL WAITING:On June 3rd I signed a contract with the Better Earth company to have solar panels installed on my roof. Installation of the panels was completed on June 18, 2022. Since then, I have been making payments to GoodLeap (the loan company) which began

shortly after the install. Better Earth has rebated me some of these payments.When after roughly 3 months my solar service had not yet been turned on. I got in touch with the ********************** regarding this. They told me that my property was not even in their inspection plans. I then called the Better Earth sales person with whom I signed the contract and brought him up to speed. After some days, he called me back informing me that he found out that the ********************** had responded to Better Earth, rejecting the particulars of the installation. About a month and a half later a technician and a ************* inspector came to my home and reached an agreement as to how to meet city code. After another month or so a Better Earth technician came out and worked on the installation. After another month and a half a worker from Better Earth and a ************* city inspector came out and examined the install and o.k.'d it but now new design plans needed to be drawn up. That was on 12/22/2022. This is December 30th and after nearly 7 months we are still waiting for the system to be activated. Meanwhile - I began to lose faith in Better Earth and back in either October or November went up in my attic to see if I might find "issues" there. In 2 locations I found that the large screws that attach the solar panels to my roof had nearly completely missed the roof studs. I mentioned this to my salesman texting him pictures I had taken with my cell phone and also later to the technician who came out for the latest inspection with the city. I've heard nothing back from either of them yet concerning that.Its December 30th and my solar system has not been turned on yet.

64.     Putative class member Catherine R complained that after one hundred and four (104) days after the panels were installed, "the system is not operational because Better Earth Solar has not made arrangements for the City inspection…"



Catherine R

⭐☆☆☆☆                                                          10/26/2022

My solar panels were installed on July 14. However, the system is not operational because Better Earth Solar has not made arrangements for the City inspection or the PG&E inspection.

65.     Putative class member Adam L complained that he is paying his utility company for electricity **and** for his solar energy system:  "solar has been installed from your company for seven months now, the solar still not

working…We still pay high cost to pg&e…"



Adam L

⭐☆☆☆☆                                                          10/05/2022

We have solar has been installed from your company for seven months now, the solar still not working, I don't know how long we have to wait to get solar work, We still pay high cost to pg&e, I hope that your company get this done as soon as passible !

66.     Putative class member Adrian E complained that after a year since contracting with Defendants, he has "an $80K system on my roof that has never been turned on or activated…now I'm paying SCE and the finance company for the panels."



Adrian E.

⭐☆☆☆☆                                                          02/28/2023

I signed a contract with Better Earth Solar in February 2022, since then it has been nothing but lies and frustrations after failing city inspection several times , the dreaded thing happened, rains came and my roof started leaking into my home. I called better earth multiple times to have them repair or replace all the broken tiles their installers broke, but they never did, I called one last time to let them know more rain was coming and yet they failed to show, so I got a hold of some tiles and went on my roof myself to replace as many tiles as I could without touching the panels or equipment I sent better earth an email letting them know that I had replaced the broken tiles along with pictures and their response was that my warranty was now void and they would no longer help in any matter. So I now have a $80k system on my roof that has never been turned on or activated. I dont know what else to do, now Im paying SCE and the finance company for the panels. Does anyone know who I can contact to help me with this nightmare please. I DO NOT RECOMMEND BETTER EARTH SOLAR to anyone

67.     Putative class member Eng C complained that Defendants installed his system in November 2022 and after the system failed to pass inspection three times, it was still not functioning as of July 14, 2023:



**Eng C**

⭐ ☆ ☆ ☆ ☆                                                           07/14/2023

Horrible Solar installer. I have had my panels installed in November 2022, and now in July 2023, my inverter is dead. Along the way the following happened:-a) In November, the installers installed the solar panels over my neighbors roof, despite the fact that I told them to make sure the plans were the correct ones.b) Then fixed that two weeks later. Then came the inspections.c) The city inspectors failed them 3 times, a) Grounding wires were not done right. b) Plans were all wrong. c) The new ground wires were exposed and ugly, Better Earth guy had to tidy it up.d) Now that I am in May 2023, PGE finally gave approval to connect to the Grid, inspections had to pass first right? This is where I pay all the money owed to Better Earth.e) Someone sends me an email early June, to set a date for a Better Earth visit to setup the inverter and teach me how to configure my account on the *************************** inverter to monitor power generation from the panels on my roof. Date set June 30th. f) Guess what, great Better Earth planner, No one comes to do anything, their support line is a joke. Imagine being number 3 caller, to next become caller number 4, then caller number 5 after waiting 10 minutes. Sending emails to customer success got someone to reply, but it was still .. looking into it and on and on. Set an appointment with the customer and NOT show up. I waited the whole day at home. As mentioned calling their support line is a joke.g) It is not mid July, nothing has been done, I still DO NOT have SOLAR. Don't do business with these clowns. I call them clowns because they seem to be incompetent, in planning, in installing, in pre inspection work, in customer support and in sticking to appointments. Only person who gave any **** was the sales guy who sold me the 'project', no sound from him since.

68.     Putative class member John Q complained Defendants installed his system in September 2022, the system was not functioning as of July 14, 2023, and Defendants were unresponsive:



**John Q**

⭐ ☆ ☆ ☆ ☆                                                           07/14/2023

We purchased solar a year ago and we still have no solar power, the panels were installed in September 2022.The company is giving us the runaround can not give us an answer, in fact they dont even reach out to us, we have to contact them. When they do call us back with no answer on why our solar system is not up and running.

69.     Putative class member Cruz F complained that Defendants installed his system in August 2022, and the system was still not connected to the power grid as of June 15, 2023 due to failed inspections:



**Cruz F**

⭐☆☆☆☆                                                   06/15/2023

I had solar panels installed in August of 2022 and they are still not connected as of June, 2023. City inspector has been out 4 - 5 times and each time has found different deficiencies in the installation. The only times anything has been done are when I've called them to complain. Last time inspection failed was June 9, 2023

70.     Putative class member Howard B complained that Defendants installed his system in October 2022 and the system was still not connected to the power grid as of June 5, 2023 due to "a fiasco" with inspections:



**Howard B**

⭐☆☆☆☆                                                   06/05/2023

My system was installed 10/31/22 and is still not working. the installation happened quickly, I then had to wait 4 months for electrical panel upgrade, then a fiasco with PGE and inspections, then wait for the solar box on the outside of my home, then wait for someone to come and get the roof system to talk with the box, then is dos'nt work, then nothing and I have left multiple messages every time someone will be getting back to me....ya right. 7 months later and still not connected and working.

71.     Putative class member Jose V complained that seven (7) months after Defendants installed his system, the system remained inoperable due to expired permits and failed inspections:



**Jose V**

⭐☆☆☆☆                                                   05/05/2023

Estoy muy ******* con esta compaa por *** ya tengo 7 meses con los paneles instalados y solo me decan *** lamentan la demora la semana pasada dieron cita para la inspeccin vino el supervisor de la ciudad y resulta *** la compaa mand los permisos vencidos dieron otra cita para esta semana el jueves ya casi a medio da solo me mandan un mensaje *** la cita ser el 12 ******* y resulta *** una hora ms ***** lleg el inspector de la ciudad para hacer la inspeccin y resulta *** a l no le dijeron nada *** cancelaron la cita esta compaa es un desastre no tienen seriedad ni son responsables ni tienen tica profesional yo les recomiendo *** ******* 5 veces antes de aceptar un **** con esta compaa plenamente no la recomiendo

19

72.     Putative class member Sally M complained that Defendants installed her system in December 2022, and as of April 22, 2023, the system had not passed inspection and remained inoperable:



**Sally M**
⭐☆☆☆☆                                                              04/22/2023

Better Earth installed solar panels on our roof in mid December 2022. After the rain we got in ** in December, we started noticing water leak in our attic and then water started dripping into our hallway inside the house and inside the garage! All of these areas are under the solar panel where they got installed! So far, as of today, 4/22/23, they have failed to come out and fix what they damaged on our tile roof! They have failed to pass the city inspection, and still have not fixed our leaking roof. We then hired a roofing company to inspect the damaged tiles on the the roof, they showed us how evident with pictures and videos how the installers cracked, broke, chipped and damaged the tiles on the roof and tried to cover up by using a black sealer - all underneath the panels and left the empty sealer tubes on the roof! We have all the evidence needed for them to be accountable and fix what they damaged - Better Earth have not done anything yet! Its been over 4 months, we have solar panels on the roof, but still not working, they did not fix the tile roof that they damaged, and have NOT pass city inspection yet! We also now have sheet rock damage from the leak in the hallway ceiling.We have been tossed around dealing with many of their case managers with out getting anywhere! They keep postponing and postponing and still no action!Worst experience ever because we cant remove the panels to fix the roof, and we cant fix the roof without removing the panels and we have been stuck since their December 2022 installation!!!

73.     Putative class member Jessica C complained that Defendants installed her system on December 2, 2022, and four (4) months later, she was still waiting for the system to pass inspection and be connected to the power grid.  In addition, she notes that she "began paying for them [the panels] and they [Defendants] assured me I wouldn't pay unless I was using them!":



**Jessica C**

⭐☆☆☆☆                                                                    03/30/2023

If I could give a negative 100 rating, I would. Buyers BEWARE! Do your research on a good solar company. Know the process of getting the panels: how many do you need, installation, applications with county to have inspection, get them turned on....Better Earth has been terrible, unprofessional, and seemingly a novice solar panel company. They don't know what they are doing and don't have their sh*t together.I had a sales rep sell me my panels in Oct. 2022. I got them installed Dec. 2. ********** called and harassed me several times before installation to speed up my installation when I had to take a day off of work to do so. They'd call late at night. Also, they sent some "kid" to get my signature twice which was supposed to be notarized, and this was basically illegal since it wasn't witnessed by a nortary. This should have been my first indication that they are a screwed up company and dishonest. I get my panels installed and they poked holes in my ceiling and damaged my ceiling then I couldn't get a hold of anyone after. They sent some handyman to fix it and it isn't done right. Then, 4 months later, I'm still waiting to have them turned on. I already began paying for them and they assured me I wouldn't pay unless I was using them! They screwed up the application with the county to have the inspection to get them approved tontuen on and had to resubmit. Every time I had a chance to even call them, they lied to me and said they were waiting on the county, but I looked into my records and THEY had the application rejected so many times they had to resubmit all over again and kept telling me they were waiting on the county. They didn't even get the cover sheet correct and didn't submit any of the plans needed! They are completely unprofessional and seem like they have no idea what they are doing. They lied to me, overcharged me, and are supposed to have a **** call line for urgent situations, but when you call their number they are never available! Beware!

74.     Putative class member Lauren E complained that seven (7) months after the solar panels were installed, the system had not been turned on after numerous instances when Better Earth employees failed to show up for appointments:

**Lauren E**

⭐☆☆☆☆                                                                    01/21/2023

We had solar panels installed on May 25, 2022....It is January 19, 2023 and the panels are still not hooked up! We have had 4 inspection appointments with the city. Two of those appointments were cancelled due to rain which I understand. Another one the person at Better Earth left for another appointment he had to get to. 30 minutes later the city inspector showed up looking for him. Finally the last appointment was yesterday, Jan. 18, 2023.....No one showed

up! Despite the numerous texts saying they would be there. I've had it with this awful company! Better Earth is quick to get the installation done but does not care about getting it actually running for you! We are not a priority to them. DO NOT USE THIS COMPANY!

75.    Putative class member Stella D complained that her installation was

started in May 2022, and had not been turned on as of December 29, 2022:

Stella D.

                                                    12/29/2022

My project has been in work since May 2022, this company lies and lies, always blaming APS or the *************** for delays when in fact the issues have been on their part because of all the resubmissions due to corrections needed. I have all the emails from APS PowerClerk with request for corrections and reminders of submissions. Ive been handed from person to person and each state they are seeing my project to the end, they have provided me with half truths and I feel I have been led on. I still do not have my project completed up and running. In speaking with my power company APS today on 12/29/2022, I was advised that the final documents were submitted on 12/27/2022 and not in November as Better Earth has stated, again half truths because they probably needed correction. My project keeps getting put to the bottom of the pile every time corrections and submissions have been done. After speaking with APS today I was finally able to access my project and was able to see all the corrections that were needed from Better Earth, so clearly Better Earth has caused these delays, on top of that I had a guarantee of minimum 9KW hour system but APS only shows 7.6KW. To anyone considering Better Earth I wouldnt, but if you do keep all communications from your *************** as well as any texts, emails from Better Earth should you need to go the legal route as Im considering and already looking at attorneys. I would prefer they cancel all contracts and debts they have created, remove their equipment and place my house back to its original good condition and start over with a more reliable honest company.

76.    Putative class member Andre C complained that he had the "panels

installed for over the better part of 10 months and they're sill non-operational…"

Andre C



10/13/2022

Absolutely pathetic customer service, Ive had these panels installed for over the better part of 10 months and theyre still non-operational, I have tried to reach out about this issue every single week with a promise of a solution but none. *** left a bad review a few days ago on this site and what a convenience I get a call about how theyre FINALLY going to submit the Work Order form to the city and have the panels operating, then they proceeded to remove the bad review. Only when a bad job came back to bite them, they decided to do something, do not do work with this company, save yourself the headache and money as they still charge you for the panels even though theyre not working.All this stress to just find out theyve been lying about the city delaying the paperwork this entire time, they failed to follow through with the follow up work, so it led to a further delay, I am at the point of tearing these panels off myself and having them pick ** the panels in whatever condition they end ** in Pathetic excuse of a company, all this is going down to the Better Business Bureau, and they are going to pay for everything

77.     Putative class member Allyson B complained that seven (7) months had passed since her permit was issued and her panels had not yet passed inspection, and had failed inspection three times:

Allyson B



09/07/2022

I originally signed my contract for solar panels in February 2022. My permit is dated 2/14/22. It is now nearly seven months later, my panels have been on my roof for six months, and we have not yet passed inspection with my city.The first problem was my living room flooded. Giant swells in my ceiling right below the solar panels. Better Earth came out and fixed it, then fixed it again, and then repaired the interior damage. Awesome, I was so grateful.We have failed inspection three times.The first time it was a true problem, something with the way it was

23

installed. Totally fine! It happens. It was fixed immediately, we scheduled another inspection. The second inspection they noted that there was just a problem with our permit - it was written for a 13 panel system and we only had a 10 panel system. None of this was communicated with me; I only found out after we failed inspection a third time for the same reason as the second time. That was back in July.Thats when I started asking questionsand received absolutely no answers. The customer service department is so polite, but really they can do nothing. I was told that their management team doesnt actually do anything and everyones backlogged. Every single time I called I was told the problem had been fixed - just that day! - but someone had to be lying because its been nearly two months since my last inspection and nothing has changed.I paid Better Earth $15k back in Februaryand we are still not turned on with my utility company. I beg anyone reading this to PLEASE choose a different company. My experience has been so frustrating because I am so helpless. I cant do anything to help fix this. They are a large company and do NOT care about individual cases. Not because the people there are mean (because they are not!) but they already have my money and have no incentive to helpso they just do not.This is my first BBB review and will hopefully be my last. Do NOT go with Better Earth.

78.    Putative class member Leon R complained that after six (6) months, his system had still not been turned on:

Leon R

                              09/26/2022

I am same as the people below started in March and just today 09/26/2022 APS hung the meter. It is still not turned on. Called today waiting to see how long it takes them to respond.

79.    Putative class member Jacob E complained that six (6) months after his system was installed, it was still not working:

Jacob E

⭐☆☆☆☆                              10/18/2022

We got our Solar installed by this company in ****** ** on April 20, 2022. It is now October 17, 2022 and it is still not working. They have not followed up on the finalized permits. Now they have been so busy to follow up with us. This should be done by now. Make sure in the contract that if its not finalized within at least 6 months maximum that you can back out of the contract and get the solar removed from your house. I would not recommend this company to any of my neighbors.

80.     Putative class member Goldie M complained that her system still had

not been turned on six (6) months after it was installed and had failed inspection

multiple times:



Goldie M

⭐☆☆☆☆                                                              02/01/2023

*************** 2/01/2023 Six months and my Solar Panels have not been turned on, they have been sending out inexperienced people to do the work, I signed up for their program and the sales person told me that if I have any problems to give him a call, only problem is he never answers his phone. Better Earth has failed the cities inspection each and every time. I feel I am been strung along while they play these games, last time the city came out I was told by the city that my electric panel is in compatable for what they are trying to do. so when I contacted them they acted like it is no problem, if it`s not designed for my electric panel, then why are you telling me it`s ok. They do not care about you and they just want you to pay for solar panels that are never turned on. I can`t keep going through this stress.

81.     Putative class member Milton M complained that his system still had

not been turned on six (6) months after it was installed due to failed inspections,

with Better Earth employees failing to show up for appointments:



Milton M.

⭐☆☆☆☆                                                              09/02/2022

This company came out in March of 2022, to install solar to my home. We are in September and the solar have not worked. The inspection never pass. They put a leak in my roof and send out someone to patch the hole. They have been sending someone out several times with no resolution, I have to call this company weekly to get an update on when theyre going to finish the job. They schedule someone to show up at my home, they never show up and never called. The dispatcher at the company talks smooth and offers a $50 gift card which you will never see. Please dont deal with Better Earth and the Salesman are very young, once they get the sale you will never hear from them again.

82.    Putative class member Dean J complained that his system still had not been turned on one (1) year after it was installed:

Dean J

⭐☆☆☆☆                                                                    05/14/2022

Today is May 13, 2022. We started the solar process with Better Earth on May 09, 2021. My system is still NOT ACTIVATED. Its been over a year. There have been several problems and the most recent one is that they made my home look like an industrial building. There are huge steel brackets all over the side of my house. Every single person I spoke with from Better Earth agreed that they would be unhappy if those brackets were on the side of their home. Not a single one of them had ever seen a job like this one. The company is run by a group of people that just pass me along to the next representative. Currently, Im dealing with someone that offered to pay half of what it would take to fix what they messed up. Extremely unprofessional. In my experience, they do not care about their reputation or the customer.

83.    Putative class member Lisa H complained that five (5) months after her panels had been installed, the system had not been turned on:

Lisa H

⭐⭐☆☆☆                                                                    11/22/2022

Long delay getting system started. Panels installed 6/2/2022. Still not turned on (11/22/2022). Ive called many times and have been told its d/t my power company and county.

84.    In addition to the aforementioned complaints posted on the Better Business Bureau website, myriad other online forums including Facebook (https://www.facebook.com/betterearthsolar/reviews), SolarReviews (https://www.solarreviews.com/installers/better-earth-reviews), Yelp (https://www.yelp.com/biz/better-earth-los-angeles) and Complaints Board (https://www.complaintsboard.com/better-earth-solar-b134015/reviews#filter)

evidence Defendants' pattern of wrongful conduct with putative Class Members complaining of the same factual allegations alleged in this Complaint.

85.    In summary, numerous putative Class Members have posted online complaints evidencing that:

      a.    Plaintiff and the Class were deprived of the use of their systems when Defendants failed to complete the systems within the 90 day period set forth in the Contract while Plaintiff and the Class had to pay the monthly payments for their systems **and** their monthly bills to their electric utility providers; and

      b.    Plaintiff and the Class have paid higher electric bills because their systems are not fully operable and/or their electric utility companies have not installed bi-directional meters which would allow Plaintiff and the Class the benefits of net metering.

## **TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

### **Discovery Rule Tolling**

86.    Plaintiff and Class Members could not have discovered through reasonable diligence that Defendants had not installed systems that were fully operable and/or that bi-directional meters had not been installed to allow for net metering within the time period of any applicable statutes of limitation.

87.    Therefore, Plaintiff's claims and the claims of all Class Members did

not accrue until they discovered Defendants' wrongful conduct.

**Fraudulent Concealment Tolling**

88.     Throughout the time period relevant to this action, Defendants concealed and failed to disclose to Plaintiff and Class Members vital information about Defendants' failure to complete systems within the 90 day period set forth in the Contract and/or failure to install systems that were fully operable and/or failure to install bi-directional meters to allow for net metering within the time period of any applicable statutes of limitation.

89.     Defendants kept Plaintiff and Class Members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiff nor the other Class Members could have discovered Defendants' representations and/or omissions were false and deceptive, even upon reasonable exercise of diligence.

90.     Prior to the date of this Complaint, Defendants knew their representations were false and deceptive, but continued to make misrepresentations about material facts, or concealed material facts, from Plaintiff and the Class.

91.     In doing so, Defendants concealed from, or failed to notify, Plaintiff and Class Members about the false and deceptive nature of Defendants' misrepresentations and/or omissions to induce Plaintiff and Class Members to contract with Defendants for the installation of solar energy systems.

28

92.     Plaintiff and Class Members justifiably relied on Defendants representations that Defendants would complete the install of systems within the 90 day period set forth in the Contract and install systems that were fully operable, including bi-directional meters to allow for net metering.

93.     Defendants' concealment was not discoverable through reasonable efforts by Plaintiff and Class Members.

94.     Thus, the running of all applicable statutes of limitation has been tolled and suspended with respect to any claims that the Plaintiff and the other Class Members have sustained as a result of Defendants' misrepresentations and omissions by virtue of the fraudulent concealment doctrine.

**Estoppel from asserting a statute of limitations defense**

95.     Defendants were under a continuous duty to disclose to Plaintiff and Class Members that Defendants had failed to install systems that were fully operable with bi-directional meters.

96.     Defendants actively concealed these material facts from Plaintiff and Class Members.

97.     Plaintiff and Class Members reasonably relied upon Defendants knowing and actively concealing these material facts.

98.     Defendants are accordingly estopped from relying on any statute of limitations in defense of this action.

**Estoppel from enforcing the arbitration clause**

99.    The Contract includes an arbitration clause requiring that any dispute, not resolved by negotiation, to be resolved by binding arbitration.

100.    As set forth in more detail herein, the arbitration clause is procedurally and substantively unconscionable in several important respects and is thus unenforceable. Plaintiff's experience, as detailed below, is demonstrative of the extraordinarily high-pressure tactics used to obtain a customer's assent to the agreement.

101.    For example, during the negotiation process when Ms. Quesada executed the Contract, Defendants represented that the offer, presented on a Wednesday, would only be valid until Saturday.  **Critically, Defendants' agent stayed in Ms. Quesada's home until she agreed to sign the Contract, required her to sign electronically on a small tablet that rendered the font too small to read, and did not give her the opportunity to read what she was signing.**

102.    Ms. Quesada is an immigrant who speaks Spanish as her first language and English as her second language. She was not educated in the United States, attended only high school in her native Nicaragua, and is employed as a housekeeper.  She has no experience in legal matters.

103.   Defendants' agent did not explain any part of the Contract, including the arbitration clause, and the Contract was presented "as is" and unalterable, with signing as a mandatory part of the transaction.

104.   Defendants presented the terms of the Contract, including the arbitration clause and the requirement to execute the Contract, to Ms. Quesada **without giving her the opportunity to read the Contract,** much less review with an attorney.

105.   Defendants' high-pressure sales tactics were used to coerce Ms. Quesada to execute the Contract and take advantage of her relatively little bargaining power. Defendants' presentation of the terms of the Contract as "take-it-or-leave-it" and Ms. Quesada's limited ability and opportunity to understand the terms of the arbitration clause deprived Ms. Quesada of a meaningful choice, and are therefore procedurally unconscionable.

106.   The arbitration clause in the Contract provides that the dispute be arbitrated before the Judicial Arbitration and Mediation Services, Inc. under the JAMS Rules of Practice and Procedure.

107.   Ms. Quesada, with no legal experience and limited ability to speak English, would be required to expend significant money to hire a lawyer to prepare her claim for arbitration and to present the claim to the arbitrator.

108.   Ms. Quesada's legal fees to arbitrate her claim would certainly exceed her damages in this claim.

109.   Ms. Quesada's limited income as a housekeeper, and her husband's limited income as a seafood processor, preclude her from hiring an attorney who charges on an hourly basis.  Furthermore, the prospect of Ms. Quesada paying an attorney who charges on an hourly basis to recover damages that are less than the amount she would pay the attorney, is not financially sound.

110.   Defendants, as sophisticated business entities with millions of dollars in revenue, can afford attorneys to defend claims in arbitration even when those claims are less than the legal fees.

111.   The arbitration clause is unreasonably favorable to Defendants and therefore substantively unconscionable.

112.   Unconscionability prevents the enforcement of a contractual provision that is overreaching, allowing one party to gain an unjust and undeserved advantage.

113.   The procedural and substantive unconscionability set forth above invalidates the arbitration clause.

114.   Defendants are accordingly estopped from enforcing the arbitration clause in this action.

## CLASS ACTION ALLEGATIONS

32

115.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of

herself and on behalf of a Nationwide Class, defined as:

## Nationwide Class

> All persons and entities within the United States
> (including its Territories and the District of Columbia)
> who contracted with Defendants for the installation of
> solar energy systems and to whom Defendants 1) failed
> to complete systems within the 90 day period set forth in
> the Contract; and/or 2) failed to install systems that were
> fully operable.

116.    In the alternative to the Nationwide Class, and pursuant to Fed. R.

Civ. P. 23(5), Plaintiff seeks to represent the following State Class as well as any

subclasses or issue classes as Plaintiff may propose and/or the Court may designate

at the time of class certification:

## Florida Class

> All persons and entities within the State of Florida who
> contracted with Defendants for the installation of solar
> energy systems and to whom Defendants 1) failed to
> complete systems within the 90 day period set forth in
> the Contract; and/or 2) failed to install systems that were
> fully operable.

117.    Excluded from all classes are Defendants, as well as Defendants'

employees, affiliates, officers, and directors, and the judge and court staff to whom

this case is assigned.

118.    Plaintiff reserves the right to modify and/or add to the Nationwide

and/or State Class prior to class certification.

33

**Fed. R. Civ. P. 23(a) Prerequisites**

119. **Numerosity.**  Both the Nationwide Class and State Class are so numerous that joinder of all members is impracticable.  Although the precise number of Class Members is unknown and is within the exclusive control of Defendants, upon information and belief, Defendants' wrongful conduct as set forth above was directed at thousands of Class Members in the United States, including hundreds in the State of Florida.

120. **Commonality.**  The claims of Plaintiff and the Nationwide Class and State Class involve common questions of fact and law that will predominate over any individual issues.  These common questions include, but are not limited to:

a. Whether Defendants knew or should have known that their representations to Plaintiff and the Class that Defendants would complete their systems within 90 days from the date of the site inspections were false and deceptive;

b. Whether Defendants knew or should have known that their representations to Plaintiff and the Class that Defendants would install systems that were fully operable were false and deceptive;

c. Whether reasonable consumers would have refused to contract with Defendants if they had known that Defendants would engage in the fraudulent, unfair, and deceptive practice of failing to complete their

systems within the 90 day period set forth in the Contract;

d.      Whether reasonable consumers would have refused to contract with Defendants if they had known that Defendants would engage in the fraudulent, unfair, and deceptive practice of failing to install systems that were fully operable;

e.      Whether Defendants' practice of misrepresenting that Defendants would complete systems within the 90 day period set forth in the Contract was to deceive Plaintiff and the Class resulting in additional profits for Defendants;

f.      Whether Defendants' practice of misrepresenting that Defendants would complete systems that were fully operable was to deceive Plaintiff and the Class resulting in additional profits for Defendants;

g.      Whether Defendants' conduct violates consumer protection statutes and other laws as asserted herein;

h.      Whether Defendants had a duty to disclose that their practice of representing to consumers that Defendants would complete systems within 90 days from the date of the site inspections was false and deceptive;

i.      Whether Defendants had a duty to disclose that their practice of representing to consumers that Defendants would install systems that were fully operable was false and deceptive;

35

j.      Whether Defendants omitted, actively concealed, and/or failed to disclose material facts about Defendants' failure to complete systems within 90 days from the date of the site inspections;

k.      Whether Defendants omitted, actively concealed, and/or failed to disclose material facts about Defendants' failure to install systems that were fully operable;

l.      Whether this concealment of material facts would have induced reasonable consumers to act to their detriment by willingly contracting with Defendants for the installation of solar energy systems;

m.      Whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief; and

n.      Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

121.   **Typicality.**  Plaintiff's claims are typical of a Nationwide Class and a State Class Member's claims.  As described herein, Defendants 1) failed to complete systems within the 90 day period set forth in the Contract; and/or 2) failed to install systems that were fully operable.

122.   Plaintiff and Class Members have been damaged by Defendants' misconduct.  Plaintiff and Class Members have incurred similar or identical losses

36

related to Defendants' wrongful conduct as set forth above.   Furthermore, the factual basis of Defendants' misconduct is common to all Class Members and represents a common thread of misconduct resulting in injury to all Class Members.

123.   **Adequacy.**  Plaintiff will fully and adequately represent and protect the interests of the Nationwide or State Class because she shares common interests with Class Members as a result of Defendants' misconduct.

124.   Plaintiff has retained counsel with experience in complex litigation.

125.   Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor her counsel have interests adverse to those of the Class.

## Fed. R. Civ. P. 23(b) Prerequisites

126.   Defendants have acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.

127.   **Predominance.**  Questions of law and fact common to the Nationwide Class and State Class, including those listed above, predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual damages on the matter can be readily calculated.  Thus, the question of

individual damages will not predominate over legal and factual questions common to the Nationwide Class and State Class.

128.   **Superiority.**  Defendants' wrongful conduct was directed at consumers uniformly as a Class.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff and Class Members have all suffered and will continue to suffer financial harm and damage as a result of Defendants' wrongful conduct, which was directed toward Class Members as a whole, rather than specifically or uniquely against any individual Class Members.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without effective remedy.

129.   **Declaratory and Injunctive Relief.**  Class wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the Class.  Class wide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in

Defendants' discharge of their duties to perform corrective action regarding

Defendants 1) failing to complete systems within the 90 day period set forth in the

Contract; and/or 2) failing to install systems that were fully operable.

## CAUSES OF ACTION

### COUNT I
**(Breach of Contract on behalf of the Nationwide Class or State Class)**

130.   Plaintiff incorporates by reference all material facts in this Complaint

as fully set forth herein.

131.   Plaintiff brings this Count on behalf of herself and the Nationwide

Class or State Class.

132.   As alleged above, Plaintiff and the Class contracted with Defendants

to install solar energy systems on their homes by executing the Home

Improvement Contract ("the Contract").

133.   The Contract is a valid contract between Plaintiff and the Class and

Defendants.

134.   As set forth in the Contract, commencement of the work was the date

the company performed the site inspection:[18]

**4. Start and Completion of Work**
Approximate Start Date - The date of substantial commencement of Work shall be the date the Company
actually commences to perform the Site Inspection/Audit on the Property, as set forth in Section 3.

---

[18] *Better Earth Electric, FL, LLC Home Improvement Contract*, p. 7.

135.   The Contract further provided that the installation would be completed within 90 days from the date Defendants performed the site inspection on the property:[19]

Approximate Completion Date - Except as otherwise provided herein, Better Earth Electric shall achieve Completed Installation within ninety (90) days from the date the Company commences to perform the Site Inspection/Audit on the Property (the "Approximate Completion Date").

**Installation shall be deemed complete on the day the Products are fully installed and ready for final inspection, start-up and testing.**

136.   As set forth in the Contract, installation was "complete" when the system was "fully installed" and ready for "inspection, start-up and testing."

137.   Therefore, a system that was not "fully installed", failed inspection, failed to "start-up" and/or failed to function could not be "deemed complete" under the terms of the Contract.

138.   In systemic, continuous and repetitive conduct, Defendants materially breached the terms of the Contract by failing to complete systems within 90 days from the date Defendants performed the site inspections on the properties.

139.   Plaintiff and Class Members were damaged because Plaintiff and Class Members were deprived of the use of their systems for months after the 90 day period lapsed.

---

[19] *Id.*

140.   In many cases, Class Members were forced to pay the full amount of their monthly loan payments for their systems **and** their electric utility bills while the systems were inoperable and not producing energy.

141.   As set forth in the Contract, the systems were to be "completed in a quality manner and in compliance with all local building and electrical codes, all other applicable laws, and all applicable utility requirements, including appropriate utility interconnection obligations."[20]

**8. Work Quality**
All work shall be completed in a quality manner and in compliance with all local building and electrical codes, all other applicable laws, and all applicable utility requirements, including appropriate utility interconnection obligations.

142.   In systemic, continuous and repetitive conduct, Defendants materially breached the terms of the Contract by installing systems that were not fully operable and failed to produce energy for various reasons, even after Defendants had represented that the systems were "complete".

143.   As set forth in the Interconnection Agreement, customers of Duke Energy are required to maintain umbrella policies and those customers who fail to secure or maintain the umbrella policy may have their electrical service disconnected.

144.   In systemic, continuous and repetitive conduct, Defendants materially breached the terms of the Contract by activating systems in violation of electrical

[20]*Id.* at p. 9.

codes and applicable utility requirements, including appropriate utility interconnection obligations, and without notifying the electric utility companies when Plaintiff and the Class did not have umbrella policies, thereby precluding the installation of bi-directional meters and depriving Plaintiff and the Class the benefits of net metering.

145.   Plaintiff and Class Members were damaged because Plaintiff and Class Members were deprived of the benefits of net-metering.

146.   Plaintiff and the Class demand judgment against Defendants and request compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
**(Unjust Enrichment on behalf of the Nationwide Class or State Class)**

147.   Plaintiff incorporates by reference all material facts in this Complaint as fully set forth herein.

148.   Plaintiff brings this Count on behalf of herself and the Nationwide Class or State Class.

149.   Plaintiff and Class Members conferred a benefit on Defendants by contracting with Defendants for solar energy system installations.

150.   Defendants voluntarily accepted and retained the benefit conferred by Plaintiff and Class Members in the form of profits.

151.   The benefits that Defendants received and retained are unjust, and inequity has resulted.

152.   Defendants knowingly accepted the unjust benefits of their misconduct.

153.   It is inequitable and unconscionable for Defendants to retain those unjust benefits without paying value to Plaintiff and Class Members.

154.   As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiff and Class Members, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action pursuant to one or more of the the proposed Classes, as they may be modified or amended, and respectfully requests that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Fed. R. Civ. P. 23, and issue an order certifying the Class as defined above;

B.     Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.     Award damages, including compensatory damages, to Plaintiff and all other Class Members;

D.      Award Plaintiff and Class Members actual damages sustained;

E.      Award Plaintiff and Class Members such additional damages, over and above the amount of their actual damages, which are authorized and warranted by law;

F.      Grant restitution to Plaintiff and Class Members and require Defendants to disgorge inequitable gains;

G.      Award Plaintiff and Class Members their reasonable attorneys fees and reimbursement of all costs for the prosecution of this action; and

H.      Award such other relief as this Court deems just and appropriate.

## **<u>JURY DEMAND</u>**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  October 13, 2023

By: */s/Louis A. Gonzalez, Esq.*
**Louis A. Gonzalez, Esq.**
Fla. Bar. No.: 84213
VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP.
2745 West Fairbanks Ave.
Winter Park, FL 32789
Phone: (407) 603.7940
Fax: (407) 603.7943

James Jonathan Rosemergy, Esq.
(Mo. Bar No. 50166), *to be admitted Pro Hac Vice*
jrosemergy@careydanis.com

44

CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Ph: 314-725-7700
Fax: 314-721-0905

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned hereby, certify that on October 13, 2023 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

By: <u>*/s/Louis A. Gonzalez, Esq.*</u>
**Louis A. Gonzalez, Esq.**
Fla. Bar. No.: 84213
VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP.
2745 West Fairbanks Ave.
Winter Park, FL 32789
Phone: (407) 603.7940
Fax: (407) 603.7943
E-mail: Louis@VargasGonzalez.com
Service E-mail:
Centralpleadings@Vargasgonzalez.com