UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MERCEDES QUESADA,

     Plaintiff,

v.                                  Case No: 6:23-cv-1809-JSS-LHP

BETTER EARTH, INC. and BETTER
EARTH ELECTRIC FL, LLC,

     Defendants.

_____/

## ORDER

Defendants move to dismiss Plaintiff's Second Amended Class Action Complaint, (Complaint, Dkt. 37), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), (Motion, Dkt. 40). Plaintiff opposes the Motion. (Dkt. 41.) Upon consideration, Defendants' Motion is granted in part, and Plaintiff's claims against Defendant Better Earth, Inc. are dismissed without prejudice.

## BACKGROUND

Plaintiff Mercedes Quesada brings this proposed class action seeking damages in excess of $5 million on behalf of herself and all persons who incurred similar or identical losses related to Defendants' allegedly wrongful conduct. (Dkt. 37 ¶¶ 56, 130.) According to Plaintiff's Complaint, she, along with "numerous putative Class Members," (id. ¶ 69), suffered "quantifiable financial harm" as a result of Defendants'

breach of contract, (*id.* ¶¶ 38–39). Plaintiff alleges that Defendants failed to install operable solar energy systems within the timeframe specified in the parties' contract. (*Id.*) Defendants are Better Earth, Inc. (BEI), a California corporation with its principal place of business in California, and BEI's wholly owned subsidiary Better Earth Electric FL, LLC (BEF), a Florida Limited Liability Company. (*Id.* ¶¶ 43, 45–46.)

Plaintiff alleges that she contracted with BEF on May 7, 2022, for the installation of a solar energy system at her home.[1] (*Id.* ¶ 12.) The contract was signed by Plaintiff, BEF, BEI as "Manager," and Daniel Roundy as "Vice President." (Dkt. 40-1 at 18.) According to the contract, installation was to begin on the date that BEF "actually commence[d] . . . the Site Inspection/Audit on the Property," and that work was expected to conclude within ninety days. (Dkt. 37 ¶¶ 13–14; Dkt. 40-1 at 8.) The contract stipulated that the installation would be "deemed complete" when the solar energy system was "fully installed and ready for inspection, start-up[,] and testing."

---

[1] While Plaintiff copied portions of the contract into her Complaint, she did not attach it in its entirety. Defendants, however, attached the contract to their Motion. (Dkt. 40-1.) While "the court is ordinarily barred from considering . . . documents attached to a motion to dismiss," *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020), a court may, in resolving a motion to dismiss, consider a document absent from the Complaint but attached to the motion to dismiss where the document is "(1) central to the plaintiff's claim and (2) undisputed," *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, the missing document is the contract upon which Plaintiff's claims rise or fall, and thus it is indisputably "central" to her claim. *See id.* (finding contract was "central" to plaintiffs' claim where it was a "necessary part of their effort to make out a claim" against defendants). Moreover, Plaintiff does not challenge the authenticity of the contract as it appears in Defendants' Motion, and indeed those portions of the contract that Plaintiff has included in her Complaint are identical to the corresponding sections of the contract included in Defendants' Motion. (*Compare* Dkt. 37 ¶¶ 13–15, *with* Dkt. 40-1 at 8.) Thus, the contract as attached is "undisputed." *Day*, 400 F.3d at 1276 ("In this context, 'undisputed' means that the authenticity of the document is not challenged."). Accordingly, the court may properly consider the contract in resolving this Motion.

(Dkt. 37 ¶ 15; Dkt. 40-1 at 8.)  Plaintiff alleges that, although installation began on May 21, 2022, it was not complete until December 16, 2022, a period of 209 days. (Dkt. 37 ¶¶ 17–20.)

Plaintiff further states that the solar energy system as installed fails to conform with the solar energy system as promised because it does not include a "bi-directional meter" that would permit "net metering," a process whereby the solar energy Plaintiff's system produces in excess of the energy she consumes would be measured, fed back into the power grid, and credited to her account.  (*Id.* ¶¶ 34, 36.)  Plaintiff's utility provider apparently refuses to install this meter until she purchases an umbrella liability policy, which policy Plaintiff contends Defendants represented they would purchase for her.  (*Id.* ¶¶ 23–24.)  As a result, Plaintiff claims that her solar energy system is not fully operable because without net metering she "has paid higher electric bills each month than she would have with net metering."  (*Id.* ¶ 38.)  Plaintiff also purports to have identified a class with common claims.  (*Id.* ¶¶ 62–66.)

Plaintiff brought her original Class Action Complaint against Defendants on September 19, 2023.  (Dkt. 1.)  On October 13, 2023, Plaintiff filed her First Amended Class Action Complaint.  (Dkt. 14.)  On January 19, 2024, Plaintiff filed the operative Second Amended Class Action Complaint.  (Dkt. 37.)  All three complaints assert the same counts against the same defendants: one count for breach of contract (Count I) and one count for unjust enrichment (Count II).  (*See, e.g.*, *id.* ¶¶ 138–62.)  Defendants filed their Motion arguing that Plaintiff fails to state a claim and does not establish

personal jurisdiction over BEI.  (Dkt. 40.)  Plaintiff opposes the Motion and argues that she has sufficiently stated a claim and has established jurisdiction.  (Dkt. 41.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain . . . a short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Federal Rule of Civil Procedure 10(b) requires the plaintiff to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  To "promote clarity," Rule 10(b) also requires the plaintiff to state "each claim founded on a separate transaction or occurrence . . . in a separate count."  *Id.*  "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1323.

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff."  *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

- 4 -

"[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Similarly, "[i]n the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff must establish a prima facie case of jurisdiction over a non-resident defendant." *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Vague and conclusory allegations do not satisfy this burden." *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018) (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006)); *see also Storms v. Haugland Energy Grp., LLC*, No. 18-cv-80334, 2018 WL 4347603, at *2 (S.D. Fla. Aug. 17, 2018) (determining that the pleading standards articulated in *Twombly* and *Iqbal* apply to motions to dismiss under Rule 12(b)(2) such that "[a]llegations that are 'no more than conclusions' . . . do not count toward establishing a *prima facie* case" of personal jurisdiction) (quoting *Iqbal*, 556 U.S. at 679). In determining whether a plaintiff has established a prima facie case of personal jurisdiction, "the district court must accept the facts alleged in the complaint as true." *Madara*, 916 F.2d at 1514.

Further, claims of fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). To meet this particularity requirement, the claims must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants

gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).  In other words, the claims must provide "the who, what, when[,] where, and how" of the alleged fraudulent activities.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)).

## ANALYSIS

The court analyzes the issue of personal jurisdiction and then determines whether the Complaint fails to state a claim.

### A. Personal Jurisdiction

Defendants move for dismissal as to BEI under Rule 12(b)(2) for lack of personal jurisdiction.  (Dkt. 40 at 12.)  "When analyzing personal jurisdiction, the [c]ourt must determine: (1) whether personal jurisdiction over the defendant exists under the forum's long-arm statute; and (2) whether exercising personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Nutramax Lab'ys, Inc. v. Lintbells Inc.*, No. 8:22-cv-1691-TPB-MRM, 2023 WL 2598663, at *2 (M.D. Fla. Mar. 22, 2023) (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)).  "Only where the long-arm statute provides jurisdiction do[es] [a court] proceed to the second step and determine" whether exercising personal jurisdiction is proper under the Fourteenth

Amendment. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010).

### 1. Jurisdiction Under Florida's Long-Arm Statute

"Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996); *see also Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 552 (Fla. Dist. Ct. App. 2017) ("The long-arm statute is to be strictly construed in favor of the nonresident defendant."). Florida's long-arm statute recognizes both general jurisdiction, Fla. Stat. § 48.193(2), and specific jurisdiction, Fla. Stat. § 48.193(1). *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). General jurisdiction permits a court to "hear any and all claims against" a defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, on the other hand, supports only those causes of action that "aris[e] out of or relate[] to" the defendant's activities within the state. *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Plaintiff appears to rely on both general and specific jurisdiction. (*See* Dkt. 37 ¶¶ 57–59.) The court discusses each of these in turn.

### a) General Jurisdiction

Regarding general jurisdiction, Florida's long-arm statute provides:

> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the

> jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2).  Plaintiff appears to rely on this section when she alleges that "Defendants' contacts with the State of Florida are systematic, continuous, and sufficient to subject them to personal jurisdiction in this [c]ourt," and thus she claims that BEI is subject to general jurisdiction in Florida.  (Dkt. 37 ¶ 57.)  *See Goodyear*, 564 U.S. at 919 ("A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so *continuous and systematic* as to render them essentially at home in the forum State.") (emphasis added; internal quotation marks omitted) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  This is, however, nothing more than a conclusory allegation that the court must disregard.  *Storms*, 2018 WL 4347603, at *2.

Even if the court did credit this allegation, general jurisdiction is proper only where a defendant is "at home," *Goodyear*, 564 U.S. at 919, which, for a corporation, is generally limited to its state of incorporation and principal place of business, *Carmouche*, 789 F.3d at 1204.  A corporation will be subject to the general jurisdiction of a third forum only in the "exceptional" case in which it is found to be "'at home' in a forum other than its place of incorporation or principal place of business."  *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19).  It is undisputed that BEI is a California corporation with its principal place of business in California.  (Dkt. 37 ¶ 46.) Moreover, the instant case is not so "exceptional" as to find general jurisdiction lies in a third forum.  *Compare Carmouche*, 789 F.3d at 1204 (finding corporation was not "at

home" in forum where it owned a bank account, maintained two addresses, filed a financing statement, joined a non-profit trade organization, and consented to jurisdiction for lawsuits arising out of a specific transaction), *with Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) (finding defendant corporation was temporarily "at home" in forum from which president maintained an office and oversaw the management of the company). Thus, general jurisdiction under section 48.193(2) is not proper as against BEI in this case.

### b) Specific Jurisdiction

Regarding specific jurisdiction, Florida's long-arm statute provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

Fla. Stat. § 48.193(1)(a). The court begins by disregarding Plaintiff's conclusory allegation that the court "has personal jurisdiction over [BEI] because of its extensive operations directed specifically to this state," (Dkt. 37 ¶ 59). *Storms*, 2018 WL 4347603, at *2. As to Plaintiff's well-pleaded allegations, she alleges that BEI is subject to personal jurisdiction in Florida because (1) it "purposefully availed [itself] of the privilege of conducting business in [Florida] by advertising and selling solar energy systems within" the state, (2) it is "registered to conduct business in [Florida],"

(3) "Florida is one of only four states where [BEI] purports to maintain a local presence and do business directly," and (4) "[BEI] promotes its operations in the state of Florida on its website." (*Id.* ¶¶ 57, 59.)

Plaintiff thus appears to argue that personal jurisdiction over BEI is proper under section 48.193(1)(a)(1). Jurisdiction under this section generally requires some showing of "a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)). "Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Id.* (citations omitted). "Another relevant factor is the defendant's marketing and advertising in Florida." *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (citing *Carmel & Co. v. Silverfish, LLC*, No. 1:12-cv-21328-KMM, 2013 WL 1177857, at *3 (S.D. Fla. Mar. 21, 2013)).

Plaintiff's allegations, taken as true and construed in the light most favorable to her, are insufficient to establish personal jurisdiction. While Plaintiff alleges that BEI claims to maintain a local presence in Florida and promotes its operations in Florida on its website, Plaintiff fails to provide information as to the "number of Florida clients served[] and the percentage of overall revenue gleaned from Florida clients." *RG Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019).

Where, as here, allegations of personal jurisdiction are primarily predicated upon the maintenance of a website targeted at a forum, the percentage of overall revenue generated by that website in the forum is critical to establishing personal jurisdiction over a foreign defendant. *See Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1314 (S.D. Fla. 2020) (finding personal jurisdiction where it was shown that defendant "specifically target[ed] Florida residents through its website advertisements, and [] derive[d] a portion of its revenue and a significant number of its users from Florida"). Because Plaintiff does not make any allegations as to the total revenue or number of clients BEI has generated in Florida through its website, her allegations are insufficient to establish jurisdiction over BEI. *See Albert v. Tinder, Inc.*, No. 22-60496-CIV-COHN/STRAUSS, 2022 WL 18776124, at *4 (S.D. Fla. Aug. 5, 2022) (finding that jurisdiction under section 48.193(1)(a)(1) was not proper where the plaintiff failed to assert that the defendants' internet advertisements generated revenue "from Florida viewers"); *see also RG Golf Warehouse*, 362 F. Supp. 3d at 1236 (determining that the defendant's maintenance of an "interactive website that is accessed daily by potential and actual Florida customers" was insufficient to establish jurisdiction even where the plaintiff had "submitted evidence that approximately seven percent of Defendant's sales are made to Florida customers").

Further, even if Plaintiff has alleged sufficient contacts between BEI and Florida, jurisdiction under section 48.193(1)(a)(1) would be proper only if BEI's contacts gave rise to Plaintiff's cause of action in this case. *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1149 (Fla. Dist. Ct. App. 2007) ("[S]ection 48.193(1)(a) . . . 'confers

jurisdiction over parties who operate, conduct, engage in, or carry on a business or business venture in this state or have an office or agency in this state for any cause of action *arising from the "doing of" those acts*.'") (emphasis in original) (quoting *Res. Healthcare of Am., Inc. v. McKinney*, 940 So. 2d 1139, 1143 (Fla. Dist. Ct. App. 2006)). There is no allegation that the few contacts BEI has with Florida gave rise to Plaintiff's causes of action. *See Oviedo v. Ramirez*, No.21-cv-23750-BLOOM/Otazo-Reyes, 2022 WL 1641865, at *6 (S.D. Fla. May 24, 2022) ("Plaintiff argues in her Response that Orchard's website states that Orchard has an office in Florida. Plaintiff further points out that Sunflower's website states that it transacts business with several Florida-based companies. Even accepting those facts as true, Plaintiff fails to allege that [her] cause of action *arose out of* Sunflower's business transactions with the Florida-based companies, or that the cause of action arose out of Orchard's office in Florida.") (emphasis in original) (internal citations omitted); *Saft Am., Inc. v. Jabil Cir. (Guangzhou), Ltd.*, No. 3:18-cv-446-J-32JBT, 2019 WL 4600401, at *7 (M.D. Fla. Sept. 23, 2019) (finding that jurisdiction was not proper under section 48.193(1)(a)(1) where the cause of action did not arise from the contacts between the defendant and the forum and collecting cases). Thus, jurisdiction does not lie against BEI pursuant to section 48.193(1)(a)(1).

### 2. Alternative Bases for Jurisdiction

Two alternate bases for personal jurisdiction as against BEI, given Plaintiff's allegations that it and BEF are "functionally the same entity," (Dkt. 37 ¶ 55), would appear to be either a veil-piercing or agency theory. "Generally, a foreign corporation

is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000)). However,

> [a] plaintiff may establish personal jurisdiction of [an] upstream, nonresident parent in three ways.  First, the plaintiff may show that the non-Florida parent company independently satisfies the test for jurisdiction under Florida's long-arm statutes.  Second, the plaintiff may establish facts that justify piercing the corporate veil.  Third, the plaintiff may show that the parent exercises sufficient control over the subsidiary to render the subsidiary an agent or alter ego of the parent, thus establishing jurisdiction.

*Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022) (alteration in original) (quoting *Schwartzberg v. Knobloch*, 98 So. 3d 173, 182 (Fla. Dist. Ct. App. 2012)).  As stated above, there is no independent basis under Florida's long-arm statute for jurisdiction over BEI.  Similarly, and as explored in greater detail below, Plaintiff fails to allege a sufficient basis to pierce the corporate veil.  *See W.P. Prods., Inc. v. Tramontina U.S.A., Inc.*, 101 F.4th 787, 791 (11th Cir. 2024) (finding that piercing the corporate veil requires a demonstration of (1) control, (2) misuse of the corporate form, and (3) a causal connection between that misuse and the plaintiff's injury) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011)).  Further, the Complaint fails to demonstrate that BEI exercised sufficient control over BEF to render it BEI's agent.  *See Knepfle*, 48 F.4th at 1292 (holding that, to establish alter ego jurisdiction, "[t]he amount of control exercised by the parent must be high and very significant") (quoting *Schwartzberg*, 98 So. 3d at 182).  Plaintiff posits in this

vein only that BEI "provide[d] training information, operational guidelines, marketing materials, and other communications to [BEF] that govern how [BEF] operates, conducts its business, and interacts with consumers"; that the corporations shared a single officer, Shaun Sharabi; and that BEI maintained Defendants' shared website. (Dkt. 37 ¶¶ 49, 52, 59.)  This is insufficient.  *Meier*, 288 F.3d at 1273 ("The court may extend jurisdiction to any foreign corporation where the affiliated domestic corporation 'manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation.'") (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. Dist. Ct. App. 1998)); *Pinnacle Foods of Cal., LLC v. Popeyes La. Kitchen, Inc. Rest. Brands Int'l, Inc.*, No. 21-21555-CIV-MARTINEZ-BECERRA, 2022 WL 17736190, at *17 (S.D. Fla. Dec. 16, 2022) (finding that alter ego jurisdiction was not proper where plaintiff failed to allege that the subsidiary was a "'mere instrumentality' that lack[ed] 'separate corporate interests of its own' and function[ed] 'solely to achieve the purpose of the dominant corporation.'") (quoting *Meier*, 288 F.3d at 1273).  "It is not enough for the entities to share officers or directors . . . for personal jurisdiction to attach, the parent corporation must exercise operational control of the day-to-day business of the subsidiary." *UnitedHealthcare of Fla., Inc. v. Am. Rental Assocs. Holdings, Inc.*, No. 16-81180-civ-MARRA/MATHEWMAN, 2017 WL 1832436, at *7 (S.D. Fla. May 8, 2017).  Plaintiff's allegations fall short of the standard required to establish personal jurisdiction.  *See United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021) (finding alter ego jurisdiction sufficiently pleaded where complaint "include[d] allegations that [a majority

shareholder] unilaterally controlled [his company], ignored corporate formalities, and commingled his personal assets with corporate assets" such that the company was a "corporation in name only").

Further, Plaintiff's contention in her Motion[2] that personal jurisdiction is proper because BEF shares a corporate address with a "handful of Better Earth[] affiliates,"[3] also fails. (Dkt. 41 at 20–21.) This, too, is insufficient to demonstrate the degree of control required to establish alter ego or agency jurisdiction against a parent corporation. *UnitedHealthcare*, 2017 WL 1832436, at *7 (finding that "the sharing of a website, address[,] or telephone number and the use of the same generic trademarks" were insufficient to submit a parent corporation to jurisdiction and collecting cases).

Plaintiff requests leave to conduct jurisdictional discovery in her response to Defendants' Motion. (Dkt. 41 at 19.) Defendants oppose this request. (Dkt. 49 at 3–4.) The court denies the request for two reasons. First, the request is procedurally improper because it is contained in a response. *United Techs. Corp. v. Mazer*, 556 F.3d

---

[2] The court is not required to consider this argument because Plaintiff fails to allege sufficient facts to make out a prima facie case of personal jurisdiction in her Complaint. *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 849 (11th Cir. 2020) ("The court will look to the plaintiff's affidavits and other discovery only if . . . the complaint alleged sufficient facts to make out a prima facie case of personal jurisdiction . . . .").

[3] Plaintiff requests that the court take judicial notice of the Sunbiz filings of a number of entities it alleges are related to BEI. (Dkt. 41 at 21 n.5.) The Federal Rules of Evidence allow a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). District courts in the Eleventh Circuit routinely take judicial notice of Sunbiz records because they are "publicly available on the Florida Department of State's website." *McGlynn v. Mia. Diario LLC*, No. 22-cv-24261-SCOLA/GOODMAN, 2024 WL 1910670, at *3 n.3 (quoting *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1082 (S.D. Fla. 2019)), *report and recommendation adopted*, 2024 WL 1908971 (S.D. Fla. May 1, 2024). Thus, the court grants this request and takes judicial notice of these records.

1260, 1280–81 (11th Cir. 2009) (affirming dismissal of case despite the plaintiff's request to seek jurisdictional discovery where the plaintiff "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs [in opposition to defendant's motion to dismiss]").   *See also Nutramax*, 2023 WL 2598663, at *3 ("To the extent that Nutramax seeks to conduct jurisdictional discovery, its request—embedded in a response in opposition to a motion—is procedurally improper and must be denied.") (citing *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1289 (S.D. Fla. 2014)).   Second, the request violates Local Rule 3.01(g), which requires a party to certify that they have "confer[red] with the opposing party in good faith" before filing a motion for leave to conduct jurisdictional discovery in a civil case.   *See* M.D. Fla. Loc. R. 3.01(g)(1)–(2).   Plaintiff does not include a certification in her response to the Motion.   (*See* Dkt. 41.)[4]

Because Plaintiff does not establish personal jurisdiction over BEI, the court grants the Motion in part and dismisses the claims against BEI without prejudice.   *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir.

---

[4] Although Plaintiff's request for judicial notice is procedurally defective for the same reasons that her request for jurisdictional discovery is, the court grants the former and denies the latter given the differences between judicial notice and jurisdictional discovery.  *See* Fed. R. Evid. 201(c) (providing that a court "may take judicial notice on its own" and "must take judicial notice if a party requests it and the court is supplied with the necessary information"); *Mother Doe I v. Al Maktoum*, 632 F. Supp. 1130, 1146 (S.D. Fla. 2007) (finding that the "decision to allow jurisdictional discovery is very much a product of the timing and nature of any jurisdictional discovery request," and denying a request to conduct jurisdictional discovery contained in a response to a motion to dismiss).

1997) (holding that a dismissal for lack of personal jurisdiction under Rule 12(b)(2) is without prejudice) (citing *Madara*, 916 F.2d at 1514 n.1).

## B. Failure to State a Claim

Defendants also raise three grounds for dismissal under Rule 12(b)(6).  First, the Complaint is an impermissible shotgun pleading.  (Dkt. 40 at 9–11.)  Second, BEI should be dismissed as a non-party to the contract underlying Plaintiff's claims.  (*Id.* at 6–9.)  Third, the Complaint fails to allege fraud with particularity.  (*Id.* at 11–12.) The court discusses these arguments in turn.

### 1. Shotgun Pleading Argument

Defendants seek dismissal of the Complaint as a shotgun pleading.  (Dkt. 40 at 9–10.)  Defendants maintain that Plaintiff's Complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" and thus "fail[s] to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  (*Id.* at 10 (quoting *Bullbag Corp. v. Bags O Money, LLC*, No. 6:20-CV-2249-PGB-GJK, 2021 WL 2521843, at *1 (M.D. Fla. Mar. 22, 2021)).)

Plaintiff's Complaint is not a shotgun pleading.  While the Complaint does "refer[] collectively to 'Defendants' almost exclusively," (*id.*), Plaintiff here "consciously grouped" Defendants together because she sought to allege each count against each Defendant, in keeping with her argument "that BEI and [BEF] should be treated as a single entity," (Dkt. 41 at 11).  Plaintiff's "complaint can be fairly read to

aver that all defendants are responsible for the alleged conduct," which "does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000); *Leo as Tr. of Est. of Grisby v. Koch Foods, LLC*, No. 4:20-cv-01997-ACA, 2021 WL 3617699, at *2 (N.D. Ala. Aug. 16, 2021) (finding that complaint did not violate Rule 8 by asserting all claims against all defendants where plaintiff had a "good faith basis for alleging their claims against all Defendants"). Plaintiff's Complaint does not fail to give Defendants "adequate notice of the claims against them and the grounds upon which each claim rests," and thus dismissal under Rule 8 is denied. *Weiland*, 793 F.3d at 1323.

### 2. Contractual Argument

Defendants also move for dismissal of Plaintiff's claims against BEI arguing that BEI was not a party to the contract underlying Plaintiff's claims. (Dkt. 40 at 6.) Plaintiff responds that (1) BEI is indeed a signatory to the contract, (Dkt. 41 at 6), and (2) BEI was a party to the contract as BEF's "alter ego" given Plaintiff's allegation that BEI and BEF are "functionally the same entity," with BEF serving as the "local entity through which [BEI] operates and engages with customers," (Dkt. 37 ¶ 55; Dkt. 41 at 6–10).

### a) BEI a Non-Signatory to the Contract

Courts hold "that one may not breach a contract unless one is a party to the contract." *Sears v. Carrier Corp.*, No. 3:07-cv-5-J-25JRK, 2008 WL 11334967, at *5 (M.D. Fla. Aug. 5, 2008); *see also* Restatement (Second) of Contracts § 235 cmt. b (Am. L. Inst. 1981) (stating that a breach may only occur where a party owes a duty to

perform under a contract).  Here, the contract was "entered into . . . by [BEF] . . . and

. . . [Plaintiff]."  (Dkt. 40-1 at 6).  In other words, the contract defines the "Parties" as

BEF and Plaintiff.  (*Id.*)  Thus, where the contract states that the "Parties hereto have

executed this Agreement individually or have caused this Agreement to be executed

by a duly authorized representative," the plain meaning is that only BEF and Plaintiff

were considered parties to the contract.  (*Id.* at 18.)  *See Pershing Indus., Inc. v. StoneMor

Fla. Subsidiary, LLC*, 355 So. 3d 1071, 1071 (Fla. Dist. Ct. App. 2023) ("Where a

contract is clear and unambiguous, it must be enforced pursuant to its plain

language.") (quoting *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015)).

Indeed, Plaintiff states in her Complaint that she contracted with BEF.  (Dkt. 37 ¶¶ 12,

41.)  She does not state that she contracted with BEI, except in conclusory allegations.

(*See, e.g.*, *id.* ¶ 140 ("Plaintiff . . . contracted with Defendants to install solar energy

systems on [her] home[] . . . .").)

While BEI signed the contract, this signature appears to have been in its

capacity as an officer of BEF rather than in its individual capacity, and thus its

signature: "Better Earth, Inc., *Manager*."  (Dkt. 40-1 at 18 (emphasis added).)  "It is

well settled that a corporation's officer is not liable for a corporation's contracts"

except in two circumstances: where (1) the officer "signed in an individual capacity,"

or (2) "the corporate veil was pierced" as between the officer and the contracting

corporation. *SIG, Inc. v. AT&T Digit. Life, Inc.*, 971 F. Supp. 2d 1178, 1191 (S.D. Fla.

2013)[5] (quoting *White-Wilson Med. Ctr. V. Dayta Consultants, Inc.*, 486 So. 2d 659, 661 (Fla. Dist. Ct. App. 1986), and *Ryan v. Wren*, 413 So. 2d 1223, 1224 (Fla. Dist. Ct. App. 1982)).[6]

Plaintiff further argues that BEI is a signatory to the contract because the contract is also signed by "'Daniel Roundy, Vice President' on behalf of '[BEI], Manager.'" (Dkt. 41 at 2, 9.) Defendants appear to assert that Mr. Roundy is an "officer of [BEI]." (Dkt. 49 at 1.) Upon review, the contract includes two signature blocks. (Dkt. 40-1 at 18.) The first of these blocks has "BETTER EARTH ELECTRIC FL, LLC" pre-printed onto it. (*Id.*) Below this is BEI's signature, also pre-printed, as "Manager." (*Id.*) Below BEI's signature, in turn, is Daniel Roundy's signature as "Vice President." (*Id.*) Daniel Roundy may have signed for BEI in its capacity as manager of BEF, and thus signed as a representative of BEF, not BEI. It is unclear to the court whether BEI is in fact a signatory to the contract and Mr. Roundy's capacity as signer. Given the lack of specificity, Plaintiff has failed to sufficiently allege that BEI was a signatory to the contract to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual

---

[5] The court in *SIG* stated that an individual officer may not be held liable for a corporation's contracts unless he "signed in an individual capacity, or unless the corporate veil was pierced or the corporate entity should be ignored because it was found to be formed or used for fraudulent purposes, or where the corporation was merely the alter ego of the shareholder." *Id.* However, the "fraudulent purpose[]" and "alter ego" language reflects elements required to pierce the corporate veil. *See W.P. Prods.*, 101 F.4th at 791. Accordingly, these do not appear to be independent bases for holding an officer of a corporation individually liable on a corporation's contract.

[6] Federal courts sitting in diversity jurisdiction are bound to follow the substantive law of the forum state as articulated by state appellate courts, "unless there is persuasive evidence that the highest state court would rule otherwise." *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (quoting *King v. Order of United Com. Travelers of Am.*, 333 U.S. 153, 158 (1948)).

matter . . . to state a claim for relief that is plausible on its fact.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation marks omitted).

### b)  Piercing the Corporate Veil

Given that Plaintiff has not sufficiently alleged that BEI was a signatory to the contract, BEI may only be held liable for breach of the contract if the corporate veil separating BEI and BEF can be pierced under the theory that BEF is merely the alter ego of BEI.  *SIG*, 971 F. Supp. 2d at 1191.  It is a central tenet of corporate law that a "corporation is a legal entity—a fictional person—capable of entering contracts and doing business in its own right." *Lama*, 633 F.3d at 1349.  "The purpose of this fiction is to limit the liability of the corporation's owners, whether they be individuals or other corporations." *Id.*  However, a parent may be held liable for its subsidiary's breach of contract under the "piercing the corporate veil" doctrine. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998).

The corporate veil may be pierced, and thus the legal fiction separating BEI and BEF disregarded, only if Plaintiff can prove that (1) BEI "dominated and controlled" BEF "to such an extent that [BEF]'s independent existence[] was in fact non-existent" such that BEI was in fact the alter ego of BEF; (2) the corporate form was "used fraudulently or for an improper purpose"; *and* (3) "the fraudulent or improper use of the corporate form" caused Plaintiff's injury. *W.P. Prods.*, 101 F.4th at 791; *see also*

*Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. Dist. Ct. App. 1998) (listing these three elements as the test for piercing the corporate veil) (citing *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994)).  Moreover, the Florida Supreme Court has stated that "courts are reluctant to pierce the corporate veil and will do so only . . . upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice."  *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984) (quoting *Roberts' Fish Farm v. Spencer*, 153 So. 2d 718, 721 (Fla. 1963)).

First, with regard to control, Plaintiff alleges that BEI "provides training information, operational guidelines, marketing materials, and other communications to [BEF] that govern how [BEF] operates, conducts its business, and interacts with consumers."  (Dkt. 37 ¶ 49.)  Plaintiff also alleges that Shaun Sharabi, a current director of BEI, was previously listed as a manager of BEF.  (*Id.* ¶¶ 51–52.)  Plaintiff further states that BEF lacks an independent website and marketing materials, and instead, "[BEI] is the business entity that operates the website, maintains an online presence, and creates all marketing materials."  (*Id.* ¶ 53 (footnote omitted).)  Plaintiff concludes that BEI "is the consumer facing corporate identity—not [BEF], which appears to . . . exist[] only on paper," and thus, BEI and BEF are "functionally the same entity."  (Dkt. 37 ¶¶ 54–55.)

These allegations, taken as true and construed in the light most favorable to Plaintiff, fail to establish the sort of corporate relationship required to pierce the corporate veil.  The degree of control required to pierce the corporate veil is very high

and requires the plaintiff to show that one corporation "dominated and controlled" another "to such an extent that the [latter] corporation's independent existence[] was in fact nonexistent." *Abdo v. Abdo*, 263 So. 3d 141, 149 (Fla. Dist. Ct. App. 2018) (quoting *WH Smith, PLC v. Benages & Assocs.*, 51 So. 3d 577, 582 (Fla. Dist. Ct. App. 2010)). That Mr. Sharabi was, at one time, an officer of both corporations is of no moment, as "the intermingling of corporate officers and board members is a common occurrence in the parent-subsidiary relationship, and it does not establish that the subsidiary is the alter-ego of the parent corporation." *Estate of Miller ex rel. Miller v. Toyota Motor Corp.*, No. 6:07-cv-1358-Orl-19DAB, 2008 WL 4525058, at *5 (M.D. Fla. Oct. 6, 2008); *Hilton Oil Transp. v. Oil Transp. Co, S.A.*, 659 So. 2d 1141, 1152 (Fla. Dist. Ct. App. 1995) (finding that shared officers and a common office were insufficient to pierce the corporate veil). That BEF lacks an independent website is also insufficient. *James Dar, LLC v. OJ Commerce.com, Inc.*, No. 21-61901-CIV-SMITH, 2023 WL 418666, at *6 (S.D. Fla. Jan. 11, 2023) (refusing to pierce corporate veil even where parent owned the website used by its subsidiary); *Sompo Japan Nipponkoa Ins., Inc. v. CSX Transp., Inc.*, No. 3:19-cv-1154-J-34PDB, 2020 WL 7074558, at *7 (M.D. Fla. Dec. 3, 2020) ("The mere fact that SSC and SIRS share a principal place of business, a website, and some overlap of governing officers is insufficient to pierce the corporate veil."). Thus, Plaintiff's conclusion that BEI and BEF are "functionally the same entity" is inaccurate insofar as she seeks to pierce the corporate veil; she has not demonstrated that BEI exercised sufficient control over BEF to disregard their separate legal existence. *See Morgan v. Ace Am. Ins. Co.*, No. 3:16-cv-705-J-39MCR, 2020 WL

9455637, at *31 (M.D. Fla. Jan. 28, 2020) ("Pleading that one corporation is the alter ego of another in conclusory fashion is not sufficient for the Court to disregard their separate legal existence.") (quotation omitted); *Cooper v. Paul Revere Life Ins. Co.*, No. 8:09-cv-1870-T-27-TBM, 2010 WL 11507084, at *2 (M.D. Fla. Aug. 12, 2010) (stating that "[i]n Florida, a 'strict standard' is applicable to one seeking to pierce a corporate veil," and an allegation that the defendant corporation was the alter ego of another, "without more," was "insufficient to pierce" the corporate veil) (quoting *Seminole Boatyard*, 715 So. 2d at 990, and citing *Steinhardt v. Banks*, 511 So. 2d 336, 339 (Fla. Dist. Ct. App. 1987)).

Even if Plaintiff had provided sufficient indicia of control by BEI over BEF, she has failed to establish the second element required to impose alter ego liability—that the corporate form was used for an improper purpose. *W.P. Prods.*, 101 F.4th at 791; *see also James Dar*, 2023 WL 418666, at *6 (holding that under Florida law, the corporate veil could not be pierced where the plaintiff had "not shown that there ha[d] been any fraudulent use of the corporate form"). The only act of impropriety that Plaintiff appears to levy against Defendants in this regard is the breach of her contract with BEF. (Dkt. 37 ¶ 39.) While breaching a contract is, "colloquially speaking, 'improper,'" the "caselaw on what constitutes impropriety" in this context "sets a much higher bar." *Pearce v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-14353-MIDDLEBROOKS/Maynard, 2023 WL 9060869, at *3; *see also id.* ("[T]he mere use of a shell corporation to enter into the lease, and the subsequent breach of the lease by failing to pay rent, did not constitute the type of improper conduct necessary to pierce

the corporate veil.") (quoting *Geigo Props., LLP v. R.J. Gators Real Est. Grp., Inc.*, 849 So. 2d 1109, 1111 (Fla. Dist. Ct. App. 2003)). Indeed, Plaintiff admits that she "cannot currently allege that [BEF] was created for fraudulent purposes," (Dkt. 41 at 19), and thus cannot establish the second element required to pierce the corporate veil.

Plaintiff similarly fails to establish the third element required to pierce the corporate veil: a causal link between the misuse of the corporate form and Plaintiff's injury. *W.P. Prods.*, 101 F.4th at 791; *see also James Dar*, 2023 WL 418666, at *6 (holding that under Florida law, the corporate veil could not be pierced where the plaintiff had "not shown that . . . any fraudulent use of the corporate form . . . ha[d] caused harm to" them). Plaintiff alleges in this regard only that BEI's "corporate governance over [BEF] resulted in the wrongful conduct directed toward" her. (Dkt. 37 ¶ 50.) This falls short of Plaintiff's burden on this point. *Segal v. Forastero, Inc.*, 322 So. 3d 159, 165 (Fla. Dist. Ct. App. 2021) (reversing summary judgment order piercing corporate veil for want of an "allegation or evidence that establishes a nexus" between a parent's control over a subsidiary and the plaintiff's injury).

Finally, Plaintiff fails to allege that an injustice would result if the corporate veil were not pierced. (*See* Dkt. 37 ¶¶ 49–55.) Such an injustice may be found where, for example, a subsidiary is shown to be unable to pay any judgment rendered against it. *Dania Jai-Alai Palace*, 450 So. 2d at 1121 ("This is the reason for the rule, stated in all Florida cases, that the courts are reluctant to pierce the corporate veil and will do so only . . . upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice."); *Pearce*, 2023 WL 9060869, at *3

("[T]here is no allegation that failure to pierce the corporate veil will result in an injustice; there is no allegation that SF Florida will be unable to pay a judgment should it ultimately be found liable."). Plaintiff neglects this point in her Complaint, (*see, e.g.*, Dkt. 37 ¶¶ 49–55), and in her response to Defendants' Motion, (*see, e.g.*, Dkt. 41 at 6–10).

For each of the foregoing reasons, Plaintiff has failed to demonstrate that the corporate veil should be pierced and liability imposed against BEI for BEF's alleged breach of contract. The court notes, however, that neither the Motion, nor Plaintiff's response, analyzes the unjust enrichment claims as distinct from the breach of contract claims. (*See* Dkt. 40; Dkt. 41.) While Defendants acknowledge Plaintiff's unjust enrichment claim, (Dkt. 40 at 5), they appear to argue that all claims against BEI must be dismissed for the sole reason that BEI was not a party to the contract between Plaintiff and BEF, (*id.* at 6–9). However, the elements of breach of contract and unjust enrichment are different, and thus the claims do not rise and fall together. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006) ("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. . . . The essential elements of a claim of unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.") (citations omitted). While the finding of an express contract between Plaintiff and BEI would "necessarily defeat" an unjust

enrichment claim, *BK Marine Constr., Inc. v. Skyline Steel, LLC*, 231 So. 3d 469, 472 (Fla. Dist. Ct. App. 2017) (citing *Real Est. Value Co. v. Carnival Corp.*, 92 So. 3d 255, 263 n.2 (Fla. Dist. Ct. App. 2012)), the court has determined, as Defendants argue, that there was no contract as between these parties.  *See also Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").  Thus, nothing in Defendants' Motion warrants dismissal of Plaintiff's unjust enrichment claim against BEI.  *See Dooley v. Gary the Carpenter Constr., Inc.*, No. 15-477-K, 2023 WL 7359848, at *2 (Fla. Dist. Ct. App. Nov. 8, 2023) ("Under Florida law, unjust enrichment is a legal fiction designed to permit recovery by contractual remedy in those cases where there is no contract.  In such cases, a contract is implied as a matter of law even though the parties to such an implied contract never indicated by deed or word that an agreement existed between them.") (citations omitted).

### 3. Particularity Argument

Plaintiff alleges in her Complaint that "Defendants concealed and failed to disclose to Plaintiff and Class Members vital information" pertaining to various ways in which Defendants allegedly rendered inadequate performance under the contract. (Dkt. 37 ¶ 96.)  Further, Plaintiff alleges that Defendants "kept Plaintiff and Class Members ignorant of vital information essential to . . . their claims" and made knowing misrepresentations of material facts, or knowingly omitted material facts, in an effort to "induce Plaintiff and Class Members to contract with Defendants for the installation

of solar energy systems." (*Id.* ¶¶ 97–99.) Plaintiff argues that this fraudulent concealment tolled the statute of limitations. (*Id.* ¶ 102.) Defendants assert that Plaintiff "accuse[s] Defendants of engaging in fraudulent conduct . . . [without] attribut[ing] any specific conduct to any specific Defendant," and thus her allegations of fraudulent concealment are insufficiently particular under Rule 9(b). (Dkt. 40 at 12.)

As Defendants suggest in their Motion, these allegations of fraudulent concealment are apparently included to toll the statute of limitations, even though Defendants submit that "Plaintiff's claims appear to be timely." (*Id.* at 2.) There is no requirement that Plaintiff plead fraud in order to adequately allege either breach of contract or unjust enrichment under Florida law. *Rollins*, 951 So. 2d at 876 ("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. . . . The essential elements of a claim of unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.") (citations omitted). And courts have noted that Rule 9(b)'s heightened pleading standards are not implicated where a plaintiff argues that the corporate veil should be pierced. *See, e.g.*, *Buser v. Experian Info. Sols., Inc.*, No. 8:23-cv-1881-TPB-UAM, 2023 WL 8828794, at *3 (M.D. Fla. Dec. 21, 2023) (finding that, though the "second predicate to pierce the corporate veil requires some allegation of fraudulent use of the corporate form," Florida does not require a

plaintiff "to prove fraud" "subject to the Rule 9(b) specificity requirements" to pierce the corporate veil); *Zhejiang Dushen Necktie Co., Ltd. v. Blue Med, Inc.*, No. 16-24679-civ-LENARD/GOODMAN, 2017 WL 4119604, at *3 (S.D. Fla. Sept. 18, 2017) (finding that where underlying claim was for breach of contract rather than fraud, the plaintiff was not required to "plead [his] piercing claim with the specificity required of fraud claims"). Plaintiff was not required to plead any of her claims with particularity, and thus dismissal under Rule 9 is not warranted.

## CONCLUSION

Accordingly:

1.   Defendant's Motion to Dismiss Second Amended Complaint (Dkt. 37) is **GRANTED in part** and **DENIED in part**.

2.   Plaintiff's request for the court to take judicial notice (Dkt. 41 at 21 n.5) is **GRANTED**.

3.   Plaintiff's request to seek jurisdictional discovery (Dkt. 41 at 23) is **DENIED**.

4.   Plaintiff's claims against Defendant Better Earth, Inc. in the Second Amended Class Action Complaint (Dkt. 37) are **DISMISSED without prejudice**. Plaintiff may file a third amended complaint that sets forth facts to support the exercise of personal jurisdiction over Defendant Better Earth, Inc. on or before September 20, 2024.

**ORDERED** in Orlando, Florida, on August 21, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record